## FREEMAN *v.* PECKHAM.

CONVERSION OF PROPERTY.—Where A. gave to B. personal property belonging to C., in payment for services rendered by B. to A., a demand of the property by C. of B., and negotiations between them in reference to the surrender of the property, not ending in a perfected arrangement for its surrender, did not relieve A. from his liability to C. for the conversion of the property.

From the Tippecanoe Common Pleas.

*F. C. Coombs* and *A. Parsons,* for appellant.

*H. W. Chase* and *J. A. Wilstach,* for appellee.

BUSKIRK, J.—This was an action by appellant against appellee for an alleged conversion of property.

There was issue, trial by the court, finding for the appellee, and, over a motion for a new trial, judgment on the finding.

The error assigned is based upon the action of the court in overruling the motion for a new trial.

The case, as made by the evidence, was substantially as follows: Peckham was the agent for the renting of a certain store; he leased it to one Dodge; Dodge got in arrears for rent, and gave up the possession; Peckham desired the building cleaned, and employed Bell to clean it; he offering Bell some things that were visible on the ground floor, that had been left by Dodge, as compensation therefor; Peckham at that time did not know the berry stands of Freeman were in the cellar, but afterward, and before they were removed, was notified of it by Bell; Peckham then told Bell that he could have them if he would clean the house out well, supposing, as he says, they were Dodge's.

The testimony of Dodge and of Freeman discloses how the berry stands came there. They both testify that at the time Dodge was lessee of the premises, they entered into a co-partnership in the sale of berries; that Freeman owned the boxes, furnished the berries, and that Dodge sold them for him, they dividing the profits, and that Freeman left the property stored with Dodge at the conclusion of the season.

The witness Dodge places the number of stands at between four hundred and five hundred; that about one-third were worth seventy-five cents apiece, and the remainder worth one dollar apiece.

Cobbler says he saw one hundred or two hundred of the stands; those he saw were worth forty cents and seventy-five cents; that he did not see all the stands.

Freeman testifies that he left from three hundred to four hundred of the stands there; that about one hundred and fifty of them were worth one dollar apiece, the rest seventy-five cents.

Bell testifies that he sold two hundred or three hundred, and used a lot for kindling.

The number, then, of the berry stands was from three hundred to five hundred, and were worth from forty cents to one dollar apiece, according to the testimony. It appears from the testimony of Freeman that he saw the berry stands at Bell's, and demanded them of him. Bell informed him that they were his, having been given to him by Peckham; that upon his learning that, he went to Peckham and demanded his property. Dodge testifies, also, to the demand made of Peckham.

The witness Bell testifies, that Freeman called upon him and demanded to know where he got the boxes, and Bell informed him that he got them from Peckham, when Freeman remarked, "There will be hell raised about this."

The foregoing evidence very clearly shows that the property in question belonged to Freeman, and that it was converted by Peckham.

These facts are not controverted by counsel for appellant, but they contend that by an arrangement made between Freeman and Bell, subsequent to the conversion, Freeman ratified the act of Peckham, and relieved him from liability. The facts tending to establish such agreement are as follows:

On this point Freeman testified: "In the spring of 1872, I saw a large quantity of the boxes at one Bell's, on Oakland Hill, in the city of Lafayette; I asked Bell where he

got them, and he told me that Peckham had given them to him for cleaning out the building; I went to see Peckham, in company with Dodge; Peckham told me that he did not suppose there was anything in the cellar of any value, and that he had given to Bell what was there for cleaning out. When I saw Bell, before seeing Peckham, Bell said to me that if I would advance him some money he would put them away; I told him that I had no money to pay with, and went to Peckham from there, and asked him for my property."

Bell testified as to the same point as follows: "I hauled eight or ten loads of the boxes away, leaving two or three loads in the cellar, when Freeman came to my house and asked me where I got those berry stands; I told him that Peckham had given them to me for cleaning out the house; he said they were his stands, and there would be hell raised about it; I told him that all I wanted was pay for my trouble, and that he had better pay me than give to lawyers; he asked me if I had a place where I could keep them; I said yes, in my barn, but they must be out of the way by time to put hay in; he said, all right, haul them up and put them away, and I will pay you; I told him that I would have to have some help to do so, and that he must either furnish me a man or money to pay the expense; he said he had no money and could not do it, and he went away; said he was going to see Peckham. Freeman did not come back, but sued Peckham; I had hauled eight or ten loads of the boxes or stands when Freeman first came, and two or three loads afterward; after Peckham was sued, Peckham saw me and told me I had better take care of the boxes, that there was some trouble about them, and I stored all that were good; I sold two or three hundred of the boxes at ten cents, and used a lot for kindling; I wanted Freeman to give me money to pay me for my trouble, and for taking care of them, and he would not do it, and I did not consider myself under any obligation to him."

It is argued by counsel for appellee, that by the above arrangement Bell became the bailee of Freeman, and that the

subsequent sale of the property by Bell was a fresh conversion, for which Peckham is not liable.

It is, on the other hand, contended that there was no perfected arrangement between Freeman and Bell; that Freeman proposed to Bell that if he would haul the balance of the boxes and store them in his barn, he would pay him; but that when Bell required him either to furnish a hand to help him, or money to hire a hand, he broke off the negotiation and went to Peckham and demanded his property, and, upon his failure to deliver it, commenced this action. Counsel for appellant insist that the true facts were testified to by Freeman, but contend that the evidence of Bell shows that there was no perfected agreement.

In our opinion, the position assumed by counsel for appellant is correct. There was no perfected arrangement which had the effect to render Bell liable, and release Peckham. This does not present a case of conflict of evidence, but the legal effect of the facts proved.

The judgment is reversed, with costs; and the cause is remanded, for a new trial.