Opinion by
White, P. J.
§ 247. Promise to answer for debt, etc., of another, to be binding, must be in writing, etc. “To sustain an action upon a promise to answer for the debt, default or miscarriage of another, such promise shall be reduced to writing and signed by the party to be charged therewith, or by some one thereto lawfully authorized.” [R. S. 2464.] In this case, Wilson had plaintiff’s horse, and when plaintiff demanded him, Wilson insisted on keeping him until plaintiff made certain proof of his ownership of the horse, etc. Braley assured plaintiff that Wilson was a reliable, responsible man, and would take care of the horse, and thereupon plaintiff left the horse with Wilson. Held, that this was not such a promise by Braley, the same being verbal, as rendered him liable for the loss of the horse while in Wilson’s possession.
§ 248. Property cannot be divested without consent of owner; market overt. It is settled law that no man can be divested of his property without his consent, and, consequently, even the honest purchaser under a defective title cannot hold against the true proprietor. With regard to sales of personal property, the rules of 'law with regard to market overt, as known to the common law, do not apply in this state. [W. & W. Con. Rep. § 272; New Kirk v. Dalton, 27 Ill. 413; Spraights v. Hawley, 30 N. Y. 441.]
*189 § 249. Trover and conversion; rules relating to. When the possession of personal property is wrongfully acquired in the first instance, and is transmitted successively to several, each possession is a new conversion. [Wells v. Ragland, 1 Swan (Tenn.), 501.] Trover may be maintained against one who sells another property, although the defendant came into the possession lawfully, and sells it believing it to be his own. [Morrill v. Moulton, 40 Vermont, 242; Johnson v. Powers, id. 611.] Possession, with claim of title, is conversion. [Dowd v. Wadsworth, 2 Dev. (N. C.) 130.] In an action of trover, “to entitle the plaintiff to recover, two points are essential to be proved: 1. Property in the plaintiff, and a right of possession at the time of the conversion; and 2, a conversion of the thing by the defendant to his own use. Whether the defendant originally came to the possession of the thing by right, or by wrong, is not material.” [2 Greenl. Ev. (13th ed.) § 636.] “A conversion, in the sense of the law of trover, consists either in the appropriation of the thing to the party’s own use and beneficial enjoyment, or in its destruction, or in exercising dominion over it in exclusion or defiance of the plaintiff’s rights, or. in withholding the possession from the plaintiff under a claim of title inconsistent with his own. It may be, therefore, direct or constructive, and of course is proved either directly or by inference; every unlawful taking is a conversion.” [2 Greenl.^Bv. § 642.]
§250. Same; demand and refusal. “Where the circumstances do not of themselves amount to an actual conversion, it will be incumbent on the plaintiff to give evidence of demand and refusal, at any day prior to the commencement of the action, the time not being material, and also to show that the defendant, at the time of the demand, had it in his power to give up the goods. . . . . The refusal, moreover, must be absolute, amounting to a denial of the plaintiff’s title to possession, and not a mere excuse or apology for not delivering the *190 goods at present; but it need not be expressed; it maybe inferred from non-compliance with a proper demand. If, however, the refusal is qualified with a condition, which the party has no right to impose, it is evidence of conversion. And so it is, if grounded on a claim of right by a third party.” [Id. § 644.] But even an absolute refusal is not always evidence of a conversion; as where the possessor of goods refuses to deliver them up, until some ownership is shown in the plaintiff. [Id. § 645.] “It seems that a qualified refusal, in order to procure reasonable time to investigate the rights of the parties, if made in good faith, would not be a conversion.” [Roberts v. Yarboro, 41 Tex. 450.] As, for instance, if demand be made by a duly authorized agent, and the defendant bona ficle refuse to deliver the goods, in consequence of his not being reasonably satisfied that the person who applies is properly empowered to receive them. [Blankenship v. Berry, 28 Tex. 449.] Where a refusal to deliver property may be considered only the .result of a reasonable hesitation in a doubtful matter, it is not sufficient evidence to prove conversion. [Robinson v. Burleigh, 5 N. H. 225.] It does not constitute conversion, per se, for the party in possession to require some evidence of ownership on the part of the claimant. [Doty v. Hawkins, 6 N. H. 247.] But the party holding the property and refusing to deliver it on demand made, because he doubts the authority of the person making such demand, must place his refusal strictly upon that ground; otherwise, the refusal affords presumptive evidence of conversion. [Ingalls v. Bulkly, 15 Ill. 224; Freeman v. Peckham, 47 Ind. 147; Vanzandt & Co. v. Hunter, 1 Mo. 71.]
§ 251. Same; law applied to facts. Sandford’s horse was stolen from him at Dallas, and he found him in possession of Wilson, in Waxahachie. Sandford claimed and demanded his horse of Wilson, who declined to give him up until Sandford had produced evidence that he was the owner of the horse. Sandford named several persons by whom he said he could prove ownership, but *191 Wilson was not satisfied to take the statements of the persons named, and required other witnesses from Dallas, which Sandford said he could and would produce. Sandford testified that he proposed to deposit the value of the horse in money, or to give Wilson bond and good security that the horse was his property, in order to get possession of him. Wilson, however, insisted that he would keep the horse until the thief from whom he purchased had been found, and that Sandford should go with him to Dallas and assist in having the thief arrested. Sandford finally agreed that Wilson should retain the horse for the present, and went with Wilson to Dallas, and at the instance of Wilson made affidavit against one Hodge, from whom Wilson said he purchased the horse, charging Hodge with the theft of the horse. Wilson had traded Hodge another horse for Sandford’s horse, and after Hodge was arrested, Wilson obtained his note with security for the value of the horse which Hodge had received from him in exchange for Sandford’s horse. Sandford was informed that Wilson was charging him for keeping his horse. He went to Waxahachie and again demanded of Wilson his horse, arid was informed that the horse had been stolen from Wilson’s livery stable. He brought this suit to recover the value of his horse from Wilson, and the verdict and judgment in the court below were against him. Held: 1. Wilson had purchased the horse from Hodge; therefore his taking was lawful, and not a conversion per se, until demand by the owner, Sandford, and refusal to deliver the property. 2. Wilson had the right to refuse delivery until Sandford established his ownership in some way. 3. But if Wilson qualified his refusal by conditions which he had no right to impose, it was a conversion, and he immediately became liable. It appears from the evidence that Wilson’s refusal was based upon two grounds; one that he wanted proof of Sandford’s ownership, and one that he did not want the horse removed until the thief could be arrested. This latter was a condition which he *192 had no right to impose. He had no right to require that Sandford should leave his horse with him until he could arrest and prosecute the thief. 4. If Sandford proposed to deposit money sufficient to cover the value of the horse, or to execute a satisfactory bond to secure Wilson against any loss, and Wilson refused such offer, after declining to receive the testimony of several witnesses, whom Sandford offered to prove his ownership by, such refusal would amount to a conversion.' [Bull v. Lipey, 48 N. Y. 5.] 5. If Wilson procured Hodge to execute to him a note for the horse he had given Hodge in the trade for Sandford’s horse, and failed or refused to deliver Sandford his horse after obtaining said note, such refusal would amount to a conversion. 6. If Wilson, under the circumstances above detailed, became liable for the conversion of the horse, then the fact that the horse was subsequently stolen from his possession, whether with or without negligence on his part, would not affect Sandford’s right to recover the value of the horse.
June 11, 1884.
Reversed and remanded.